■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT WELLS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Hayes, J.), rendered October 2, 1980, convicting him of rape in the first degree, burglary in the second degree (two counts), sexual abuse in the first degree (three counts), and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The defendant moved to dismiss the indictment on the ground that persons of Hispanic origin were substantially underrepresented in the Grand Jury pool and on the Grand Jury which returned the indictment, in violation of his constitutional guarantee of

equal protection of the law and his right pursuant to statute (Judiciary Law, § 500) to a Grand Jury selected at random from a fair cross section of the community. The motion was denied by Criminal Term, and defendant was subsequently tried and convicted. Since the defendant herein is black, we must confront the threshold question of whether he has standing to raise a challenge to the Grand Jury based on an underrepresentation of Hispanics thereon. In our view, the defendant herein has standing to raise a challenge to the Grand Jury on the ground that it was not selected at random from a fair cross section of the community, in violation of section 500 of the Judiciary Law, but does not have standing to raise any challenge based on an equal protection argument. In *Duncan v Louisiana* (391 US 145) the United States Supreme Court held that the Sixth Amendment's provision for a jury trial is binding on the States by virtue of the Fourteenth Amendment. In *Taylor v Louisiana* (419 US 522, 526), the Supreme Court went a step further by holding that the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn "is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions" (see, also, *Duren v Missouri,* 439 US 357). Although the holding of *Taylor* was limited to petit juries, the concept and requirement of a fair cross section of the community enunciated therein was specifically expanded by statute in this State to govern Grand Juries as well. Specifically, section 500 of the Judiciary Law provides as follows: "It is the policy of this state that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community". In *Taylor,* the court also addressed the issue of lack of standing raised by the State of Louisiana, in view of the fact that Taylor was a male and he was challenging the underrepresentation of women. The court held that a criminal defendant has standing to challenge the exclusion of certain groups from a petit jury resulting in a violation of the fair cross section requirement, whether or not he is a member of the excluded class (see *Taylor v Louisiana, supra,* p 526). The holding of the Supreme Court in *Taylor* flowed inexorably from a prior decision of that court (*Peters v Kiff,* 407 US 493). In *Peters,* the defendant, a white man, was convicted of a crime by a State court in Georgia. The defendant initiated a habeas corpus proceeding in the Federal court alleging that there was a systematic exclusion of blacks from the Grand Jury that indicted him and the petit jury that convicted him, which deprived him of his constitutional rights to due process and equal protection. The Supreme Court in *Peters* initially noted that it had never before considered a white defendant's challenge to the exclusion of blacks from jury service. After reviewing those cases where black defendants had challenged the exclusion of blacks from jury service based on the equal protection clause, the court noted that "other constitutional values" were involved in the systematic exclusion of certain groups from jury service (*Peters v Kiff, supra,* p 499). Specifically, the court in *Peters* stated (*supra,* pp 500, 503-504): "[T]he exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross section of the community * * * When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable * * * [The] exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." In order to vindicate these "other constitutional values", the Supreme Court held (*supra,* p 504): "[W]hatever his race, a criminal defendant has standing to

challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him *due process of law*" (emphasis added). The court in *Peters* (at p 497, n 5) further noted that "[h]e also claims his own rights under the Equal Protection Clause have been violated, a claim we need not consider in light of our disposition." Accordingly, it is clear that the defendant herein, though black, has standing to object, on a fair cross section due process ground, to the underrepresentation of Hispanics on the Grand Jury. However, defendant does not, in our view, have the requisite standing to assert a denial of equal protection of the law by virtue of the underrepresentation of Hispanics on the Grand Jury (see *Castaneda v Partida,* 430 US 482). In *Castaneda* a Mexican American challenged, on equal protection grounds, the discrimination against Mexican Americans in the Grand Jury selection system used in Texas. The Supreme Court of the United States specifically held (*Castaneda v Partida, supra,* p 494): "in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of *his* race or of the identifiable group to which *he* belongs." (Emphasis added; see, also, *Rose v Mitchell,* 443 US 545, 565; *Guice v Fortenberry,* 633 F2d 699; *United States v Layton,* 519 F Supp 946, 957; *United States v Cross,* 516 F Supp 700, 706.) We are aware there is some authority in the Federal courts for a contrary holding, i.e., that even an equal protection challenge to alleged improper jury composition can be made by one who is not a member of the excluded class (see, e.g., *United State v Breland,* 522 F Supp 468, 477-478; *United States v Holman,* 510 F Supp 1175, 1178; *United States v Jenison,* 485 F Supp 655, 659). However, a close examination of those holdings reveal that they are based on cases dealing with an alleged lack of a fair cross section from which the jury was selected, and not an alleged denial of equal protection of law (see, e.g., *Taylor v Louisiana, supra; Duren v Missouri, supra; Peters v Kiff, supra*). Accordingly, we do not recognize these authorities as persuasive on this particular issue. Nor is *People v Chestnut* (26 NY2d 481) controlling on this issue. In *Chestnut,* the defendants, five whites and one black, challenged the composition of a Grand Jury on the ground that qualified blacks and Hispanics had been excluded therefrom, in violation of the defendants' right to equal protection of law. Although the court addressed the denial of equal protection claim on the merits, notwithstanding the fact that the defendants did not exactly correspond to the groups claimed to be excluded it must be stressed that in *Chestnut,* in contrast to the case at bar, the District Attorney never raised the issue of lack of standing. However, assuming that defendant possessed the necessary standing to raise the equal protection issue, nevertheless he cannot prevail on the merits on either of his challenges to the Grand Jury (see *People v Guzman,* 89 AD2d 14). We have examined the remaining points raised by defendant and find them to be without merit. Mollen, P. J., Titone, Mangano and Gibbons, JJ., concur.