■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG L. KINNARD, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered October 21, 1982, upon a verdict convicting defendant of the crime of rape in the first degree. At approximately 6:30 A.M. on August 5, 1982, defendant was picked up for questioning by an officer of the Albany Police Department. Defendant had been accused of raping his girlfriend's sister earlier that morning. Defendant was driven to the police station where he was given the *Miranda* warnings. Defendant did not express a wish to speak to an attorney or to have one appointed. However, he did state that he wished to remain silent. Despite this, two police officers continued to question him about the alleged rape, without eliciting anything incriminating. At approximately 7:15 A.M., defendant was taken to another room in the station to be booked. In the midst of this procedure, defendant said that he wished to make a statement. He was then taken to another room by the officers, was again read his *Miranda* rights, and made a full confession. At the *Huntley* hearing, defendant's motion to suppress this statement was denied. He now appeals from that determination and from the jury verdict convicting him of the crime of rape in the first degree. The principal issue on appeal is the admissibility of defendant's confession, made after he had explicitly indicated to the police that he did not wish to respond to their questions. The suppression

court found that defendant's statement was spontaneously volunteered and was therefore not subject to being suppressed. As previously described, the evidence did establish that it was defendant, and not any police officer, who initiated the interchange leading to his confession when he asked to make a statement during booking. Were it not for the fact that earlier, the police had not "scrupulously honor[ed]" defendant's rights by persisting in questioning him after he had invoked his privilege against self incrimination (*Miranda v Arizona,* 384 US 436, 479), there is little question that defendant's statement would fall well within the spontaneous statement exception to *Miranda* and, therefore, be admissible. Even after an accused has exercised his constitutional rights, he may "simply change his mind and voluntarily make a statement" (*People v Buxton,* 44 NY2d 33, 37). Further, under the case law, a finding by the suppression court that a statement was voluntary or spontaneous is conclusive if the evidence was subject to conflicting inferences and unless no possible reading of the facts supports it (*People v Lynes,* 49 NY2d 286, 294; *People v Leonti,* 18 NY2d 384, 390, cert den 389 US 1007). The question thus comes down to whether the police's earlier infringement of defendant's right to remain silent by continuing the questioning after he told them he did not wish to speak, even though unavailing at the time, fatally tainted the spontaneity of his subsequent statement, making it instead the product of inducement, provocation or subtle coercion (*People v Rogers,* 48 NY2d 167, 174). Whether a volunteered statement is so tainted is also generally a question of fact to be resolved by the suppression court, within the limits previously discussed (*People v Tanner,* 30 NY2d 102, 106). On the basis of the evidence adduced on this issue at the suppression hearing, we cannot say that County Court overstepped the bounds of legitimate fact finding in concluding that defendant's confession was spontaneously volunteered. At most there was a period of only 45 minutes that elapsed between his initial arrest and the booking procedure during which he expressed a desire to make a statement. Any improper questioning obviously covered an even shorter time span. Moreover, the fact that defendant invoked his right to remain silent, rather than his right to counsel, demonstrates a confidence in his own ability to decide whether or not to co-operate without needing the advice of an attorney. The circumstances surrounding defendant's detention and the conduct of the police here is to be contrasted with those presented in *People v Rogers (supra),* where the police violated the defendant's attorney's instructions by continuing to question him for a period of four hours, all during which defendant was manacled to a desk. It was because of those facts, and not merely because the defendant had been in custody and his statement followed a period of questioning, that the court in *Rogers* held the statement nonspontaneous, as a matter of law (*People v Rogers, supra,* p 174). Closer in point is *People v Talamo* (55 AD2d 506), where the volunteered statement resulting from a police contact initiated by the defendant following arraignment was upheld as untainted. If anything, the facts here present a stronger case for genuine spontaneity. Absent here was the possible illegal taint in *Talamo* of an incriminating statement which had actually resulted from the illegal questioning earlier on the day of that defendant's arraignment. Accordingly, *Talamo* should be a fortiori controlling for upholding the finding by the suppression court that defendant's statement was spontaneously volunteered. Equally unpersuasive is defendant's contention that the trial court erred in refusing to submit to the jury a charge on the lesser included offense of attempted rape in the first degree. CPL 300.50 (subd 1) provides that upon request by either party, the court must submit a lesser included offense to the jury: "if there is a reasonable view of the evidence which would support a finding that the defendant committed [the] lesser offense but did not commit

the greater." There is no such reasonable view of the evidence here which would support an acquittal on the completed rape but a conviction of an attempt. The principal evidence against defendant was the complainant's testimony of a completed rape and defendant's confession to the same effect. Defendant chose to frame the issue of fact for the jury by flatly denying any sexual misconduct with the victim. Contrary to defendant's argument, the fact that no seminal fluid was found in the complainant's vagina is not evidence that a rape was not committed. Pursuant to the statutory definition set forth in section 130.35 of the Penal Law, a male is guilty of rape in the first degree "when he engages in sexual intercourse with a female * * * [b]y forcible compulsion". " 'Sexual intercourse' " is defined as occurring "upon any penetration, however slight" (Penal Law, § 130.00, subd 1). Accordingly, the lack of seminal fluid in complainant's vagina after the rape does not disprove defendant's guilt. This is particularly true in view of the fact that the medical witness testified that he was unable to determine the presence or absence of seminal fluid in the complainant's vagina because she was menstruating at the time of the attack. Accordingly, we find that the trial court did not err in its jury charge. We have examined defendant's other contentions and find them to be equally without merit. Judgment affirmed. Sweeney, J. P., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.